IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Willie James Asbury,                        )
*a/k/a Sa'id Abdullah al'Rashid*            )    Case No. 8:13-cv-03364-RMG-JDA
                                            )
    Plaintiff,                              )
                                            )
    v.                                      )    **REPORT AND RECOMMENDATION**
                                            )    **OF MAGISTRATE JUDGE**
David Tartarsky; Don Driskell; Joette       )
Scarborough; Dennis Bush; Sharonda         )
Sutton; Gregory Washington; J. Tomarchio;  )
Nurse Smith; Nurse Monroe; Lt. Copeland;   )
Sgt. Cunningham,                            )
                                            )
    Defendants.[1]                          )
                                            )
_____    )

        This matter is before the Court on a motion for summary judgment filed by

Defendants [Doc. 112] and motions for leave to file depositions by written questions, for

issuance of three subpoenas, and to compel filed by Plaintiff [Docs. 129, 135, 136, 137].

Plaintiff is proceeding pro se and brings this civil rights action pursuant to 42 U.S.C. § 1983.

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d),

D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under

42 U.S.C. § 1983 and to submit findings and recommendations to the District Court.

        Plaintiff filed this action on November 20, 2013.[2]  [Doc. 1.]    Defendants filed a

motion for summary judgment on July 14, 2014.  [Doc. 112.]  On July 15, 2014, the Court

_____

        [1]Defendants John Kinard; James Barber, III; Joseph McCrorey; and David Norton
were dismissed from the action without prejudice and without issuance and service of
process on March 21, 2014.  [Doc. 38.]

        [2]A prisoner's pleading is considered filed at the moment it is delivered to prison
authorities for forwarding to the court.  *See Houston v. Lack*, 487 U.S. 266, 270 (1988).
Accordingly, this action was filed on November 20, 2013.  [Doc. 1-22 (envelope stamped
as received November 20, 2013).]

filed an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the summary judgment procedure and of the possible consequences if he failed to adequately respond to the motion. [Doc. 113.] Plaintiff filed a response in opposition to the motion for summary judgment on September 8, 2014. [Doc. 122.] Defendants filed a reply on October 3, 2014. [Doc. 128.] Subsequently, Plaintiff filed motions for leave to file depositions by written questions, for issuance of three subpoenas, and to compel. [Docs. 129, 135, 136, 137.] Defendants filed responses in opposition to the motions for leave to file depositions by written questions, for issuance of three subpoenas, and one of Plaintiff's motions to compel. [Docs. 133, 138.] The motions are now ripe for review.

## BACKGROUND

At all times relevant to the allegations in this action, Plaintiff was in the custody of the South Carolina Department of Corrections ("SCDC") and housed at Broad Rover Correctional Institute ("Broad River"). [Doc. 1 at 3.] The Court construes Plaintiff's Complaint to allege the following federal claims:[3]

1.  Plaintiff has been the victim of harassment, intimidation, and retaliation by Defendants because he has brought previous lawsuits against some of the present Defendants. [*Id.* at 52, 66.] He provides the following assertions as evidence of this claim:

---

[3]Plaintiff's 113-page Complaint and accompanying documents are voluminous and, at times, difficult to interpret. Many of Plaintiff's allegations are repeated throughout the Complaint. The Court has diligently studied the pleadings and liberally construes them as raising the federal claims addressed herein.

a.  Defendants Bush, Sutton, Washington, Smith, Munro,[4] Copeland, Cunningham, and Tomarchio were responsible for the confiscation of an extra mattress the medical staff had ordered for Plaintiff [*id.* at 52–53];

b.  Defendants Bush, Sutton, Washington, Smith, Munro, Copeland, Cunningham, and Tomarchio were responsible for moving Plaintiff to a top bunk from a bottom bunk in violation of his medical restriction [*id.* at 53–54];

c.  Plaintiff's walker was confiscated on two occasions:

    i.  On December 14, 2011, Defendant Washington took Plaintiff's medically prescribed walker under false pretenses after conferring with Defendants Smith and Munro.  [*Id.* at 54.] Plaintiff was reissued a walker on April 3, 2012.  [*Id.* at 55.]

    ii.  On June 8, 2013, Defendant Sutton, with the acquiescence of Defendants Bush, Washington, Copeland, Cunningham, Tomarchio, Smith, and Munro, wrongfully confiscated Plaintiff's walker.  [*Id.* at 56.]  As a result, Plaintiff fell and lacerated his left knee and broke his eye glasses.  [*Id.* at 57.]  Plaintiff contends he is at increased risk of injury until he is reassigned a walker [*id.* at 60];

---

[4]Defendants point out that Plaintiff misspells Defendant Munro as Monroe in the caption and throughout his filings.  [Doc. 112-1 at 1.]  Accordingly, the Court will refer to her as Defendant Munro.

d.  Defendants Bush, Sutton, Washington, Smith, Munro, Copeland, Cunningham, and Tomarchio refused to allow Plaintiff to wear a head covering to protect against extreme temperatures in violation of his medical restrictions. [*Id.* at 62.] Plaintiff contends that some inmates are permitted to wear hats. [*Id.*] ;

e.  Defendants Bush, Sutton, Washington, Smith, Munro, Copeland, Cunningham, and Tomarchio were responsible for confining Plaintiff to his cell for 72 hours without a hearing in violation of the Due Process Clause. [*Id.* at 62–63.] Plaintiff asserts he was confined as a result of an argument with Defendant Cunningham over whether Plaintiff had defaced state property by making "cut off" pants. [*Id.*] He further claims Defendants failed to process his grievance on this issue [*id.* at 64–65];

f.  The grievance office required Plaintiff to undergo a strip search before entering administrative areas. [*Id.* at 66.] Plaintiff claims Defendants intentionally required Plaintiff to enter the administrative areas on three separate occasions in order to subject him to the humiliation of undergoing a strip search. [*Id.*] He further claims he is particularly sensitive to this issue due to his Islamic beliefs. [*Id.* at 65–66.]

2.  Plaintiff makes a claim under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act asserting that while the ADA applies to him because he suffers from heart disease, Defendants limit handicapped status to those in wheelchairs. [*Id.* at 71.] Inmates considered handicapped are given

4

certain privileges including going to the dining hall, the mail room, and the commissary before other inmates so that they do not have to stand in line. [*Id.* at 71–72.] Plaintiff asserts he is entitled to the same treatment because his medical condition makes it dangerous for him to stand in line for an extended period of time. [*Id.* at 72.]

3. Defendants Smith, Munro, and Tomarchio displayed deliberate indifference to Plaintiff's serious medical needs. [*Id.* at 69.] Plaintiff asserts the following as evidence of this claim:[5]

 a. Defendants Smith, Munro, and Tomarchio refused to issue Plaintiff orthopedic shoes when a specialist recommended them for Plaintiff. [*Id.* at 75–76.] Plaintiff claims these Defendants never summoned him for his appointment to be fitted for the shoes and then falsely asserted that Plaintiff declined to attend the appointment. [*Id.* at 76.] Plaintiff

---

[5]To the extent Plaintiff attempts to raise a claim of medical deliberate indifference against any non-medical personnel defendant, his claim must fail. To establish a claim for denial of medical care against non-medical personnel, a prisoner must show that the non-medical personnel failed to promptly provide needed medical treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990), *overruled in part on other grounds by Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Moreover, because most prison officials are not trained medical personnel, they are entitled to rely on the opinions, judgment, and expertise of medical personnel concerning the course of treatment that the medical personnel deemed necessary and appropriate for the prisoner. *See id.* Here, Plaintiff repeatedly alleges the non-medical defendants were aware of the actions of the medical staff and had a duty to act; however, Plaintiff has proffered no evidence that any non-medical personnel defendant engaged in the type of conduct required by controlling case law to establish an Eighth Amendment medical claim of deliberate indifference. Accordingly, the Court limits its discussion of these issues to Defendants Smith, Munro, and Tomarchio, the medical defendants in this case.

5

contends that, to cover up their actions, these Defendants had Plaintiff sign a waiver under false pretenses [*id.* at 77];

b.  Defendants Smith, Munro, and Tomarchio are keeping Plaintiff on a heart-healthy diet against his wishes.  [*Id.* at 80.]  Plaintiff asserts Defendants are medicating Plaintiff without his permission [*id.* at 80–81];

c.  Defendants Smith, Munro, and Tomarchio refuse to treat Plaintiff's prostate condition [*id.* at 90–91];

d.  Defendants Smith, Munro, and Tomarchio altered Plaintiff's medical classification status form.  [*Id.* at 51, 53.]  Plaintiff claims the restrictions on his medical classification form were permanent and the alterations may cause him harm [*id.* at 51];

e.  Defendants Smith, Munro, and Tomarchio refuse to allow Plaintiff to receive his meals in his housing unit.  [*Id.* at 85.]  Plaintiff asserts that as a result, he is forced to walk long distances in violation of his medical restrictions and stand in line which may cause him harm as a result of his medical conditions.  [*Id.*]  Plaintiff contends this request would not burden the prison staff because they already bring meals to some inmates in their cells [*id.*];

f.  Defendants Smith, Munro, and Tomarchio do not allow Plaintiff to receive his heart-healthy meals when his housing unit is on administrative lockdown.  [*Id.* at 85–86.]  Plaintiff claims other inmates continue to receive special meals while on lockdown and failing to

6

allow him to receive his special diet could exacerbate his heart condition. [*Id.* at 86–89.]

4.      Defendants Driskell, Tartarsky, and Scarborough are engaged in an ongoing conspiracy that resulted in Plaintiff losing his previous lawsuits. [*Id.* at 12–49.] Plaintiff asserts he became aware of the conspiracy after Defendant Driskell informed him about it in November 2011. [*Id.* at 12; Doc. 122 at 11.]

5.      Plaintiff claims he was discriminated against as a result of his religious beliefs. [*See* Doc. 1.]

6.      Plaintiff asserts Defendants Tartarsky and Scarborough denied him access to the courts when Defendant Tartarsky took Plaintiff's hand-written Complaint and legal materials and would not return them to Plaintiff. [*Id.* at 20–21.] Plaintiff claims this act denied him the opportunity to be heard and adjudicate his claims. [*Id.* at 21–22.]

7.      Plaintiff further contends he was denied access to the mail when Defendant Tartarsky would not allow Plaintiff to mail his Complaint. [*Id.* at 21.]

8.      Plaintiff alleges that he is not permitted to sit on the benches in the administrative area and is forced to stand, which may cause him harm as a result of his medical conditions. [*Id.* at 59.]

9.      Plaintiff makes various claims against Defendants Driskell, Tartarsky, and Scarborough related to the loss of his prison job, earned work credits, and state pay. He claims Defendants acted to unconstitutionally deprive him of his rights. [*Id.* at 15–49.] Plaintiff asserts the stress from losing his job

caused him to have a heart attack on May 10, 2004.  [*Id.* at 25; Doc. 1-1 at 4].

Plaintiff states his claims are against all Defendants and that he seeks $125,000 from each Defendant in proximate damages; $125,000 from each Defendant in compensatory damages; $250,000 from each Defendant in punitive damages; and all costs and fees.  [*Id.* at 112.]

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978).  Pro se pleadings are held to a less stringent standard than those drafted by attorneys.  *Haines*, 404 U.S. at 520.  Even under this less stringent standard, however, a pro se complaint is still subject to summary dismissal.  *Id.* at 520–21.  The mandated liberal construction means that only if the court can reasonably read the pleadings to state a valid claim on which the complainant could prevail, it should do so.  *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999).  A court may not construct the complainant's legal arguments for him.  *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993).  Nor should a court "conjure up questions never squarely presented."  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

8

This action is filed pursuant to 42 U.S.C. § 1983, which provides a private cause of action for constitutional violations by persons acting under color of state law. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Accordingly, a civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

Section 1983 provides, in relevant part,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and laws of the United States;" and (2) that the defendant "deprived [the plaintiff] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (third alteration in original) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids

9

> imposing on the State, its agencies or officials, responsibility
> for conduct for which they cannot fairly be blamed.

*Id.* (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted).  Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed."  *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001).  Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'"  *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).  State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State . . . or by a person for whom the State is responsible" and that "the party charged with the deprivation [is] a person who may fairly be said to be a state actor."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).  A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'"  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows
> that there is no genuine dispute as to any material fact and the
> movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.  *Id.* at 324.  Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue.  *Id.*  Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion.  *Anderson,* 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion.  *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.  Further, Rule 56 provides in pertinent part:

11

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION[6]

**Eleventh Amendment Immunity**

The Eleventh Amendment prohibits federal courts from entertaining an action against a state.  *See, e.g., Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam) (citations omitted); *Hans v. Louisiana*, 134 U.S. 1, 10B11 (1890).  Further, Eleventh Amendment immunity "extends to 'arm[s] of the State,' including state agencies and state officers acting in their official capacity," *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (alteration in original) (internal citations omitted), because "a suit against a state

---

[6]The Court is aware that Defendants argue Plaintiff has failed to comply with Rule 8 of the Federal Rules of Civil Procedure under the standard articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  [Doc. 112-1 at 2.]  However, after a review of the pleadings and out of an abundance of caution given Plaintiff's pro se status, the Court declines to address Defendants' Rule 8 argument and instead will consider Defendants' remaining arguments.

official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . [and] is no different from a suit against the State itself," *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted). Therefore, Eleventh Amendment immunity protects state agencies and state officials sued in their official capacities from liability for monetary damages under 42 U.S.C. § 1983. *Id.* As a result, to the extent Plaintiff has alleged claims against Defendants in their official capacities, those claims must be dismissed because Defendants are entitled to immunity pursuant to the Eleventh Amendment.

**Res Judicata/Collateral Estoppel**[7]

Defendants contend that summary judgment is appropriate on res judicata and/or collateral estoppel grounds with respect to Plaintiff's claim 9—Defendants Driskell, Scarborough, and Tartarsky's unconstitutional actions resulted in the loss of Plaintiff's prison job, earned work credits, and state pay and caused Plaintiff's heart attack. [Doc. 112-1 at 5–8, 15–49.] The Court agrees Plaintiff's claim is barred by res judicata and collateral estoppel.

---

[7]Plaintiff appears to argue that res judicata and collateral estoppel do not apply to the claims regarding the loss of Plaintiff's prison job, earned work credits, and state pay. [Doc. 122 at 4.] However, Plaintiff also argues that in the present action he is alleging a conspiracy in the trying of the earlier cases and is not actually relitigating these claims. [Doc. 122 at 13–14.] Out of an abundance of caution, the Court will consider both arguments.

### *Res Judicata*

On July 28, 2008, Plaintiff filed a complaint in this Court against Defendants Driskell and Scarborough, and two others, alleging damages resulting from the loss of his prison job. [Civil Action No. 3:08-cv-02671-DCN, Docket Entry 1.]  The action was dismissed with prejudice on June 10, 2009, when the Court granted summary judgment in favor of the defendants in that action.   [Civil Action No. 3:08-cv-02671-DCN, Docket Entry 46.] Accordingly, Defendants contend the present claims against Scarborough and Driskell relating to Plaintiff's lost job, earned work credits, and wages should be subject to summary judgment for res judicata.  [Doc. 112-1 at 5–6.]  The Court agrees.

Under the doctrine of res judicata, "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action."  *Montana v. United States*, 440 U.S. 147, 153 (1979).  Because the judgment in Plaintiff's suit against Scarborough and Driskell was in federal court, federal rules of res judicata apply.  *See Shoup v. Bell & Howell Co.*, 872 F.2d 1178, 1179 (4th Cir. 1989).  "To establish a res judicata defense, a party must establish: (1) a final judgment on the merits in a prior suit, (2) an identity of the cause of action in both the earlier and the later suit, and (3) an identity of parties or their privies in the two suits." *Jones v. SEC*, 115 F.3d 1173, 1178 (4th Cir. 1997) (citation and internal quotation marks omitted).

Plaintiff appears to argue that there is no identity of the cause of action and there was not a final judgment on the merits in the previous suit.  Specifically, Plaintiff argues the previous case was dismissed on procedural grounds and that the claims are not identical because, in the present action, Plaintiff is asserting Defendants engaged in a conspiracy that affected the outcome of the previous case.  [Doc. 122 at 12–14.]  Plaintiff argues the

14

previous case resulted in summary judgment because he did not file objections to the Report and Recommendation of the magistrate judge. However, United States Magistrate Judge Joseph R. McCrorey specifically addressed Plaintiff's job claims and found they were barred by the statute of limitations and failed to state a constitutional violation. [Civil Action No. 3:08-cv-02671-DCN, Docket Entry 42 at 3–6.] Further, District Judge David C. Norton's order clearly states that he performed a "de novo review of the record" and found "the magistrate judge's report accurately summarizes this case and the applicable law." [Civil Action No. 3:08-cv-02671-DCN, Docket Entry 46 at 2.] Accordingly, the previous case resolution was not based on a procedural technicality, but was a final determination on the merits. Thus, Plaintiff's claims against Scarborough and Driskell are barred by res judicata.

### Collateral Estoppel

Regarding the claims against Tartarsky, the issues in this case are barred by collateral estoppel. "Collateral estoppel or issue preclusion forecloses the relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom [issue preclusion] is asserted had a full and fair opportunity to litigate." *Ramsay v. U.S.I.N.S.*, 14 F.3d 206, 210 (4th Cir. 1994) (alteration in original) (citation and internal quotation marks omitted).

> For collateral estoppel to apply, the proponent must establish that: (1) the issue sought to be precluded is identical to one previously litigated; (2) the issue must have been actually determined in the prior proceeding; (3) determination of the issue must have been a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment must be final and valid; and (5) the party against whom estoppel is asserted must have had a full and fair opportunity to litigate the issue in the previous forum.

*Sedlack v. Braswell Servs. Grp., Inc.*, 134 F.3d 219, 224 (4th Cir. 1998).

15

Here, all elements are met. The allegations regarding Plaintiff's loss of state pay, state job, and earned work credits were litigated and determined in the previous proceeding, and the prior judgment is final and valid.  Also, Plaintiff had a full and fair opportunity to litigate the issues in the prior action.  Plaintiff filed a response in opposition to the motion for summary judgment and appealed the order to the Fourth Circuit Court of Appeals, which denied the certificate of appealability. [Civil Action No. 3:08-cv-02671-DCN Docket Entries 52, 59.]  Accordingly, Plaintiff is attempting to re-litigate an issue previously decided by this Court, and Plaintiff's action is barred by collateral estoppel in addition to res judicata.[8]

**Failure to Exhaust**

Defendants contend, among other arguments, that certain claims should be dismissed for failure to exhaust administrative remedies. [Doc. 112-1 at 9.]  Plaintiff asserts that all claims have been grieved or he attempted to grieve them but was prevented from doing so by Defendants. [Doc. 122 at 15.]  The Court agrees that some of Plaintiff's claims should be dismissed for failure to exhaust administrative remedies.

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "no action shall be brought with respect to prison conditions under section 1983 of this title, or

---

[8]In addition to Plaintiff's previously litigated pay-related claims, in this case Plaintiff also contends he is owed a prevailing wage for a portion of the time he was employed at the prison. [Doc. 1 at 101.]  First, such claim appears to be barred by the applicable statute of limitations.  In any event, to the extent Plaintiff alleges a constitutional violation, his claim must fail because he has no property interest in the wages earned.  *See Washlefske v. Winston*, 234 F.3d 179, 184 (4th Cir. 2000) (finding that a prisoner has no property interest in wages earned);  *Borror v. White*, 377 F. Supp. 181, 183 (W.D. Va. 1974) ("[T]here exists no [federal] constitutional right on the part of a state prisoner to be paid for his labor.").  To the extent Plaintiff alleges a violation under state law, Plaintiff's state law claims are discussed in the Remaining State Claims section, *infra*.

any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

As the United States Supreme Court observed:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Porter v. Nussle*, 534 U.S. 516, 524–25 (2002) (internal citations and quotations omitted). Consequently, the PLRA's exhaustion requirement is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 524, 532. The exhaustion requirement applies even if the relief sought in the civil action is not available in the administrative proceedings. *See Booth v. Churner*, 532 U.S. 731, 741 (2001).

Exhaustion is defined by each prison's grievance procedure, not the PLRA; an inmate must comply with his prison's grievance procedure to exhaust his administrative remedies. *Jones v. Bock*, 549 U.S. 199, 218 (2007). An inmate's failure to "properly take each step within the administrative process . . . bars, and does not just postpone, suit under § 1983." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002); *see also White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997) (upholding dismissal of an inmate's complaint because the inmate failed to proceed beyond the first step in the administrative grievance

17

process). *But see Jones*, 549 U.S. at 219–24 (rejecting "total exhaustion rule" and holding that when presented with a complaint containing exhausted and unexhausted claims, courts should "proceed[] with the good and leave[] the bad"). Courts within the District of South Carolina have found an inmate exhausts his administrative remedies when he completes all steps of a prison's grievance procedure, and § 1997e(a) does not require inmates to further appeal to South Carolina's Administrative Law Court. *See, e.g., Ayre v. Currie*, No. 05-3410, 2007 WL 3232177, at *7 n.5 (D.S.C. Oct. 31, 2007); *Charles v. Ozmint*, No. 05-2187, 2006 WL 1341267, at *4 (D.S.C. May 15, 2006).

Exhaustion is an affirmative defense; an inmate is not required to plead exhaustion in his complaint. *Jones*, 549 U.S. at 211–12; *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 681 (4th Cir. 2005). However, to survive a motion for summary judgment asserting he failed to exhaust, the inmate is required to produce evidence in response to the motion that refutes the claim that he failed to exhaust. *See Hill v. Haynes*, 380 F. App'x 268, 270 (4th Cir. 2010) (unpublished opinion) (holding that "to withstand a motion for summary judgment, the non-moving party must produce competent evidence sufficient to reveal the existence of a genuine issue of material fact for trial" (citing Fed. R. Civ. P. 56(e)(2))); *see also Celotex*, 477 U.S. at 323–24 (stating that once the party seeking summary judgment demonstrates there is no genuine issue of material fact, the non-moving party, to survive the motion for summary judgment, must demonstrate specific, material facts exist that give rise to a genuine issue).

Defendants have submitted a copy of the SCDC grievance policy [Doc. 112-10] and the affidavit of Ann B. Hallman ("Hallman"), Branch Chief for the Inmate Grievance Branch for SCDC [Doc. 112-2.], to establish Plaintiff did not exhaust his administrative remedies

because he failed to follow the proper grievance procedures for certain claims.  SCDC has

an established grievance procedure. [*Id.* ¶ 3.]  The procedure requires an inmate to first

attempt to resolve any issue informally by filling out a Request to Staff form.  [*Id.* ¶¶ 4, 5,

16.]  If that is unsuccessful, the inmate may file a Step One grievance by filling out an

"Inmate Grievance Form" within 15 days of the alleged incident and attaching the Request

to Staff form.  [*Id.* ¶¶ 5, 7.]  The time to file a Step One grievance is tolled while the inmate

waits for a response from the staff member; however, once the inmate receives a

response, he must file a Step One grievance within five days.  [*Id.* ¶ 18.]  If the inmate is

dissatisfied with the response and wishes to pursue the claim, he must submit a Step Two

grievance to the Inmate Grievance Coordinator ("ICG") within five days of the receipt of the

response to the Step One grievance.  [*Id.* ¶ 8.]  The response to the Step Two grievance

is considered SCDC's final agency decision.  [*Id.* ¶ 9.]

***Claims Not Grieved***

The following claims should be dismissed for failure to exhaust administrative

remedies because these issues were never grieved:

1(a)    Defendants Bush, Sutton, Washington, Smith, Munro, Copeland, Cunningham, and Tomarchio were responsible for the confiscation of an extra mattress that the medical staff had ordered for Plaintiff.

1(d)    Defendants Bush, Sutton, Washington, Smith, Munro, Copeland, Cunningham, and Tomarchio would not allow Plaintiff to wear a head covering in order to protect himself from extreme temperatures.[9]

---

[9]Hallman reports that Plaintiff filed a Step One and a Step Two grievance regarding an alleged arbitrary confiscation of his hat by Defendant Cunningham.  [Doc. 112-2 ¶ 21.]  However, at no point in either grievance does Plaintiff assert that the hat was medically necessary or for the purpose of protecting him from extreme temperatures.  [Doc. 112-11 at 41–43.]

Hallman also reports Plaintiff filed a Step One grievance pertaining to Defendants'

1(f)  The grievance office required Plaintiff to undergo a strip search before entering administrative areas.

3(c)  Defendants Smith, Munro, and Tomarchio refuse to treat Plaintiff's prostate condition.

3(d)  Defendants Smith, Munro, and Tomarchio altered Plaintiff's medical classification status.

3(e)  Defendants Smith, Munro, and Tomarchio refuse to allow Plaintiff to receive his meals in his housing unit.

5     Plaintiff claims he was discriminated against as a result of his religious beliefs.

8     Plaintiff alleges that he is not permitted to sit on the benches in the administrative area and is forced to stand, which may cause him harm as a result of his medical conditions.

Hallman has averred that Plaintiff failed to file a grievance with respect to these claims. [Doc. 112-2 ¶ 22 (Hallman Affidavit, listing these claims as ones for which Plaintiff failed to file grievances).]

With respect to most of these claims, Plaintiff has failed to provide any evidence, beyond his own conclusory statements, that he completed the grievance procedure and, thus, summary judgment is appropriate.  With respect to three claims—1(a) Defendants Bush, Sutton, Washington, Smith, Munro, Copeland, Cunningham, and Tomarchio were responsible for the confiscation of an extra mattress that the medical staff had ordered for Plaintiff; 3(c) Defendants Smith, Munro, and Tomarchio refuse to treat Plaintiff's prostate

---

refusal to allow him to wear a head covering.  [Doc. 112-2 ¶ 17.]  However, upon review, the Court concludes Plaintiff was grieving the punishment he received for wearing the head covering.  [Doc. 112-11 at 16.]  Even if the Court were to consider this grievance in determining whether Plaintiff exhausted his administrative remedies with regard to his head covering, the grievance was returned to Plaintiff as unprocessed.  [Doc. 112-2 ¶ 17.] Accordingly, the claim has not been exhausted and summary judgment is appropriate.

condition; and 3(d) Defendants Smith, Munro, and Tomarchio altered Plaintiff's medical classification status—Plaintiff has provided copies of grievances he alleges were filed with respect to these issues.  [Doc. 122-6 at 2–3; Doc. 122-8 at 11–12; Doc. 122-9 at 2.] However, the copies Plaintiff has provided bear no office markings or any other evidence that these grievances were actually filed.  Accordingly, Plaintiff has failed to demonstrate that he exhausted administrative remedies with respect to these three claims and, thus, summary judgment is appropriate. *See Lucas v. Eagleton*, Case No. 2007 WL 2457571, at *8 (D.S.C. Aug. 23, 2007) (holding that grievances submitted by a plaintiff that bear no markings or notation of being filed with SCDC are insufficient to prove exhaustion). Because Plaintiff has failed to exhaust his administrative remedies with respect to these issues, Defendants' motion for summary judgment should be granted with respect to these claims.

### *Unprocessed Grievances*

The following grounds should be dismissed because Plaintiff's grievances were returned unprocessed and Plaintiff failed to correct the errors or file a Step Two grievance; accordingly, these claims have not been exhausted:

> 1(c)(ii)      On June 8, 2013, Defendants Bush, Sutton, Washington, Copeland, Cunningham, Tomarchio, Smith, and Munro took Plaintiff's walker from him which caused Plaintiff to fall and injure his knee.
>
> 6      Defendants Tartarsky and Scarborough denied Plaintiff access to courts.
>
> 7      Defendants Tartarsky and Scarborough denied Plaintiff access to the mail.

Hallman has averred that these claims were returned to Plaintiff as unprocessed and Plaintiff failed to correct the error or file a Step Two grievance.  [Doc. 112-2 ¶¶ 11, 16.]

21

According to the grievance policy, unprocessed grievances may only be appealed using SCDC Form 19-11 within ten days of the date the grievance was returned to the inmate. [Doc. 112-10 ¶ 13.3.]  If the inmate failed to provide all necessary information or sign the grievance, the inmate has five days to re-file a properly completed grievance.  [*Id.*]  With respect to these claims, Plaintiff has failed to provide any evidence, beyond his own conclusory statements, that he completed the grievance procedure.  Accordingly, Plaintiff has failed to demonstrate that he exhausted administrative remedies with respect to these claims and, thus, summary judgment is appropriate.  *See Bryan v. S.C. Dep't of Corr.*, No. 4:08-1590-TLW-TER, 2009 WL 702864, at *3 (D.S.C. Mar. 16, 2009) ("The fact that a grievance was unprocessed, without more, is insufficient to show that [prison officials] prevented [a prisoner] from exhausting his administrative remedies.").  Because Plaintiff has failed to exhaust his administrative remedies with respect to these issues, Defendants' motion for summary judgment should be granted with respect to these claims.[10]

### *Grievances Missing a Step Two*

The following claims should be dismissed because Plaintiff failed to file a Step Two grievance in accordance with SCDC grievance procedure; accordingly, these claims have not been exhausted:

---

[10]Defendants argue Plaintiff failed to exhaust his administrative remedies with respect to claim 3(a)—Defendants Smith, Munro, and Tomarchio refused to issue Plaintiff orthopedic shoes when a specialist recommended them for Plaintiff. [Doc. 112-1 at 15–16.] They contend his grievance was returned as unprocessed.  [*Id.*]  Plaintiff, however, provides a copy of a Step Two grievance regarding his fitting that has been returned for an invalid grievant number.  [Doc. 1-13 at 4–5.]  Taking all facts in the light most favorable to the Plaintiff, the Court will address this claim on the merits rather than exhaustion grounds.

1(b)          Defendants Bush, Sutton, Washington, Smith, Munro, Copeland, Cunningham, and Tomarchio were responsible for Plaintiff being moved from a bottom bunk to a top bunk.

1(c)(i)       On December 14, 2011, Defendant Washington, with the consent of Defendants Smith and Munro, took Plaintiff's walker.

Hallman has averred that Plaintiff completed his Step One grievance with respect to these claims. [Doc. 112-2 ¶¶ 12, 13.] However, Plaintiff failed to file Step Two grievances in compliance with SCDC grievance procedure. [*Id.*] Although Plaintiff conclusorily states that he has exhausted the grievance procedure or was prevented from exhausting, he has failed to provide any evidence that he filed Step Two grievances with respect to these claims. Accordingly, Plaintiff has failed to demonstrate that he exhausted administrative remedies. *See Woodford v. Ngo*, 548 U.S. 81, 93–95 (2006) (holding that a failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under any federal law, including § 1983). Because Plaintiff has failed to exhaust his administrative remedies with respect to these issues, Defendants' motion for summary judgment should be granted with respect to these claims.

### *Grievance Lacking a Response*

Defendants argue that Plaintiff's grievance pertaining to claim 1(e)— Defendants Bush, Sutton, Washington, Smith, Munro, Copeland, Cunningham, and Tomarchio were responsible for confining Plaintiff to his cell for 72 hours in violation of the Due Process clause—had not been processed at the institutional level before he filed this action; and, accordingly, Plaintiff has not exhausted his administrative remedies with respect to this issue. [Doc. 112-16 at 3.] The Court disagrees.

SCDC's grievance policy states that the warden will respond in writing to an inmate's Step One grievance within 45 days. [Doc. 112-10 ¶ 13.5.] SCDC's policy also states that "in most instances, grievances will be processed from initiation to final disposition within 171 days except where the Branch Chief/Designee, Inmate Grievance Branch, specifically agrees to a request for an extension. If an extension is granted, the IGC will notify the inmate in writing." [Doc. 112-10 ¶ 11.] Here, Plaintiff and Defendants each provide a copy of Plaintiff's Step One grievance, marked as received on June 27, 2012, related to his unconstitutional confinement claim. [Docs. 112-11 at 34–35; 122-8 at 2.] Under SCDC's policy, the warden's response was due on August 11, 2012. However, the response from IGC is dated June 20, 2014, and the response from the warden is dated July 8, 2014. [Doc. 122-8 at 2, 4.] Even if the Court were to give SCDC the benefit of its 171-day final disposition deadline, the response from the warden should have been completed by December 15, 2012. There is no evidence that an extension was requested or granted. At the time Plaintiff filed suit, on November 20, 2013, the time for the warden to respond had expired.

The weight of case law addressing this issue holds a prisoner's claim should be deemed exhausted when the inmate fails to receive a timely response to his grievance. *See, e.g., Whitington v. Ortiz*, 472 F.3d 804, 807–08 (10th Cir. 2007) ("[A] prisoner cannot be required to wait indefinitely for a response to his final grievance before he may seek judicial review. That is, when prison officials fail to timely respond to a grievance, the prisoner has exhausted 'available' administrative remedies under the PLRA."); *Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 996 (6th Cir. 2004) ("Following the lead of the four other circuits that have considered this issue, we conclude that administrative remedies are

24

exhausted when prison officials fail to timely respond to a properly filed grievance."); *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) ("We join the Eighth and Fifth circuits on this issue because we refuse to interpret the PLRA 'so narrowly as to ... permit [prison officials] to exploit the exhaustion requirement through indefinite delay in responding to grievances.'" (alterations in original) (citation omitted)).   Given that almost two years elapsed before Plaintiff received a response to his Step One grievance, Plaintiff's grievance should be considered exhausted under the PLRA.   Accordingly, the Court will address the merits of this claim.[11]

**Merits of Remaining Federal Claims**

### *Deliberate Indifference to Serious Medical Needs Claims*

Deliberate indifference to a prisoner's serious  medical needs violates the Eighth Amendment and states a cause of action under § 1983 because deliberate indifference constitutes "the 'unnecessary and wanton infliction of pain.'"  *Estelle*, 429 U.S. at 104–05 (quoting  *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (joint opinion of Stewart, Powell, and

---

[11]Defendants also argue claims 3(b)—Defendants Smith, Munro, and Tomarchio are keeping Plaintiff on a heart-healthy diet against his wishes—and 3(f)—Defendants Smith, Munro, and Tomarchio do not allow Plaintiff to receive his heart-healthy meals when his housing unit is on administrative lockdown—are not properly exhausted as to the individually named defendants Plaintiff lists in his Complaint.  With respect to claim 3(f), Defendants contend that Plaintiff's grievances are against SCDC and not the individually named Defendants in this action.  [Doc. 112-16 at 4.]  Defendants also argue that Plaintiff has exhausted his administrative remedies with respect to claim 3(b) only as to Defendant Munro.  [Doc. 128 at 4–5.]  Defendants do not assert that Plaintiff failed to file all of the necessary steps with respect to these claims, but that he named different Defendants in his grievances.  Under the liberal standard applied to pro se filings, the Court finds the filed grievances substantially comply with the PLRA and, subsequently, turns to the merits of these claims.  [*See* Docs. 112-11 at 10–13, 22–25.] *See Moore v. Bennette*, 517 F.3d 717, 726 (4th Cir. 2008) (holding that a prisoner is not required to grieve specific defendants, he must only adhere to the grievance procedure).

Stevens, JJ.)).  Deliberate indifference exists when prison officials know of a substantial risk

to a prisoner's health or safety and consciously disregard that risk.  *See Farmer v. Brennan*,

511 U.S. 825, 836 (1994); *Miltier v. Beorn*, 896 F.2d 848, 851–52 (4th Cir. 1990)

("Deliberate indifference may be demonstrated by either actual intent or reckless disregard.

A defendant acts recklessly by disregarding a substantial risk of danger that is either known

to the defendant or which would be apparent to a reasonable person in the defendant's

position." (citation omitted)).  Within the United States Court of Appeals for the Fourth

Circuit, "the treatment must be so grossly incompetent, inadequate, or excessive as to

shock the conscience or to be intolerable to fundamental fairness" to violate a prisoner's

Eighth Amendment rights.  *Miltier*, 896 F.2d at 851.

To prevail on an Eighth Amendment claim, the prisoner must demonstrate (1) his

medical condition was a sufficiently serious one[12] and (2) subjectively, the prison officials

acted with a sufficiently culpable state of mind, which is satisfied by showing deliberate

indifference by the prison officials.  *Goodman v. Wexford Health Sources, Inc.*, No. 09-

6996, 2011 WL 1594915, at *1 (4th Cir. Apr. 28, 2011) (quoting *Johnson v. Quinones*, 145

F.3d 164, 167 (4th Cir. 1998)).  As the United States Supreme Court has explained,

> Since, we said, only the "'unnecessary *and wanton* infliction of
> pain'" implicates the Eighth Amendment, a prisoner advancing
> such a claim must, at a minimum, allege "deliberate
> indifference" to his "serious" medical needs.  "It is *only* such
> indifference" that can violate the Eighth Amendment;

---

[12]"A medical need is 'serious' if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990) (citing *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3rd Cir. 1987); *Hendrix v. Faulkner*, 525 F. Supp. 435, 454 (N.D. Ind. 1981)).

> allegations of "inadvertent failure to provide adequate medical
> care," or of a "negligent . . . diagnos[is]," simply fail to establish
> the requisite culpable state of mind.

*Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (emphasis and alteration in original) (citations omitted).  Further, in the context of prisoner medical care, the Constitution requires only that prisoners receive adequate medical care; a prisoner is not guaranteed his choice of treatment.  *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988) (citing *Layne v. Vinzant*, 657 F.2d 468, 471 (1st Cir. 1981)); *see Russell v. Sheffer*, 528 F.2d 318, 318 (4th Cir. 1975) (citing *Blanks v. Cunningham*, 409 F.2d 220 (4th Cir.1969); *Hirons v. Director*, 351 F.2d 613 (4th Cir.1965)) ("Prisoners are entitled to reasonable medical care."); *see also, e.g.*, *Barton v. Dorriety*, No. 9:10-cv-1362, 2011 WL 1049510, at *2 (D.S.C. Mar. 21, 2011) (citing *Jackson*, 846 F.2d at 817).  The fact that a prisoner believed he had a more serious injury or that he required better treatment does not establish a constitutional violation.  *See, e.g.*, *Russell*, 528 F.2d at 319.

### Claim 3(a)—Orthopedic Shoes

In claim 3(a), Plaintiff alleges Defendants Smith, Munro, and Tomarchio refused to issue Plaintiff orthopedic shoes when a specialist recommended them for Plaintiff.  [Doc. 1 at 75–79.] Defendants argue Plaintiff cannot demonstrate that he has suffered any injury or that Defendants acted in an objectively unreasonable manner.  [Doc. 112-1 at 12–16.] Defendants allege Plaintiff was given an appointment with Capital Prosthetics to be fitted for orthopedic shoes on May 15, 2012, but Plaintiff declined to attend because he was not informed of the appointment beforehand.  [Docs. 112-1 at 15–16; 112-4 ¶ 16.]  Further, Defendants claim Plaintiff has not requested another appointment.  [Doc. 112-1 at 16.] Plaintiff contends he was never told of the appointment.  [Doc. 1 at 76.]  After Defendants

27

failed to notify him of the appointment, Plaintiff claims they had Plaintiff sign a waiver under false pretenses.  [*Id.* at 77.]  Plaintiff maintains he was told the waiver was for an appointment to see the urologist, not his fitting for orthopedic shoes.  [*Id.*]

Defendants proffer the affidavit of Defendant Tomarchio, who states that Plaintiff declined to attend his appointment to be fitted for the orthopedic shoes because he had not been told of the appointment ahead of time.[13]  [Doc. 112-4 ¶ 17.]  Since that time, Defendant Tomarchio reports that Plaintiff did not complain of foot pain for 10 months after the scheduled  appointment and Plaintiff showed no signs of experiencing pain while walking.[14]  [*Id.* ¶ 18.]  Plaintiff has provided no evidence to support his contention that Defendants lied to him in order to coerce Plaintiff into signing a waiver.  Plaintiff cannot maintain a claim of deliberate indifference to serious medical needs without some evidence that Defendants acted with a sufficiently culpable state of mind.  As Plaintiff has failed to create a genuine issue of material fact regarding Defendants' deliberate indifference to his serious medical needs, summary judgment is appropriate with respect to this claim.

### Claim 3(b)—Heart-Healthy Diet

In claim 3(b), Plaintiff contends that Defendants are medicating him against his will by keeping him on the heart-healthy diet against his wishes. [Doc. 1 at 80–81.] He argues both that Defendants are deliberately indifferent to his serious medical needs and that he

---

[13]In Defendant Smith's affidavit, he explains that inmates often are not told of outside appointments in advance for security purposes.  [Doc. 112-6 ¶ 5.]

[14]Plaintiff submits the affidavit of Bobby Patterson, who states he observed Plaintiff walking with difficulty on July 6, 2013; however, Patterson avers Plaintiff's difficulty was a result of the absence of walker and not because he lacked orthopedic shoes. [Doc. 112-8 at 8 ¶ 5.]

has a right to refuse treatment. [*Id.*] Plaintiff would prefer the vegetarian diet. [*Id.* at 82.] Defendants assert the heart-healthy diet is essential to Plaintiff's health in light of his complicated cardiac history. [Doc. 112-1 at 15.] Further, the chaplain decides who can be placed on the vegetarian diet, and he removed Plaintiff from  the vegetarian diet. [*Id.* at 14.]

Here, Plaintiff does not take issue with the fact that he has been placed on a special diet for his health, he merely disputes the specific meal plan being offered.[15]   He wishes to be placed on the vegetarian diet, which he argues would also treat his medical condition, and taken off of the prescribed heart-healthy diet.  Plaintiff is not refusing treatment, as his pleadings assert; he is instead trying to choose a different type of treatment.  However, as previously stated, an inmate must receive adequate medical treatment but not his choice of treatment.  Accordingly, Plaintiff has failed to create a genuine issue of material fact

---

[15]To the extent that Plaintiff alleges that the heart-healthy diet is insufficient as a meal, prisons and detention facilities are required to provide "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *McFadden v. Butler*, 2011 WL 2437511, *1 (D.S.C., 2011) (citing *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985)). Assuming a diet's nutritional adequacy, prison officials have the discretion to control its contents. *Id.* (citing *Divers v. Dept. of Corr.*, 921 F.2d 191, 196 (8th Cir. 1990)); *Madyun v. Thompson*, 657 F.2d 868, 874–75 (7th Cir. 1981) (holding the allegation that food served to segregated prisoners was cold and not on the menu served to general prison population was insufficient to state an Eighth Amendment violation); *Hoitt v. Vitek*, 497 F.2d 598, 601 (1st Cir. 1974) (deciding that prisoners' allegation of deprivation of hot meals failed to state a claim of cruel and unusual punishment, given the stipulation that three meals were provided daily);and, *Prophete v. Gilless*, 869 F.Supp. 537 (W.D. Tenn. 1994) (holding that food which was cold by the time it was served did not constitute cruel and unusual punishment).

Here, Plaintiff alleges that the heart-healthy diet is lacking in vital nutrients. [Doc. 1 at 82.]  Plaintiff is not entitled to meals that satisfy all of his nutritional wishes, he is merely entitled to "nutritionally adequate food."  Plaintiff has neither alleged nor provided any evidence that the heart-healthy diet is nutritionally inadequate.

regarding Defendants' deliberate indifference to his serious medical needs, thus, summary judgment is appropriate with respect to this claim.[16]

### Claim 3(f)—Meals on Lockdown

In claim 3(f), Plaintiff alleges he requires a special diet because he suffers from cardiovascular disease but that he is not served a heart-healthy diet when his dormitory is on administrative lockdown. [Doc. 1 at 86–89.] He further alleges that other inmates are still served their special diets while on lockdown. [*Id.*] Defendants contend that the short-term interruption in his diet does not cause Plaintiff harm. [Doc. 112-1 at 22.] The Court agrees.

Plaintiff argues that the regular diet could cause him harm due to the sodium content and nutritional content. [Doc. 1 at 87.] However, he provides no further evidence supporting his claim. Defendants, on the other hand, proffer the affidavit of Defendant Tomarchio, who states that Plaintiff would not suffer any harm as a result of a short-term alteration to his heart-healthy diet. [Doc. 112-4 ¶ 29.] Plaintiff cannot establish that Defendants have recklessly disregarded his personal health or safety and, accordingly, summary judgment is appropriate with respect to this claim.[17]

---

[16]To the extent that Plaintiff alleges keeping him on the heart-healthy diet violates his religious beliefs, he has provided no evidence to support this claim, including the tenants of his religious beliefs violated by the heart-healthy diet. *See Ross*, 759 F.2d at 365 (stating that conclusory allegations or denials, without more, are insufficient to preclude granting a summary judgment motion).

[17]In addition to Plaintiff's claims under § 1983, Plaintiff also argues Defendants actions violated the ADA and the Rehabilitation Act. "[T]he Rehabilitation Act and the ADA employ the same standards and purposes, and, thus, the court may rely on case law addressing claims under either statute in analyzing a case of disability discrimination." *Griffin v. Holder*, 972 F. Supp. 2d 827, 834 (D.S.C. 2013) (citing *Smaw v. Commonwealth of Va. Dept. of State Police*, 862 F. Supp. 1469, 1474 (E.D. Va.1994)). A disabled inmate

### Claim 1(e)—72 Hour Confinement

In claim 1(e), Plaintiff asserts he was unconstitutionally confined to his cell for 72 hours on the order of Defendant Cunningham. [Doc. 1 at 63–64.] He argues he was denied due process of law. [*Id.* at 64.] Defendants contend that SCDC policy permits informal disciplinary proceedings, including up to 72 hours of confinement. [Doc. 112-1 at 20.]

The Fourth Circuit has stated that "[t]he federal constitution itself vests no liberty interest in inmates retaining or receiving any particular security or custody status." *Slezak v. Evatt*, 21 F.3d 590, 594 (4th Cir. 1994). "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." *Meachum v. Fano*, 427 U.S. 215, 224 (1976). Under the Supreme Court's ruling in *Sandin v. Conner*, 515 U.S. 472 (1995), a liberty interest may be created when state action imposes an "atypical and significant

---

may sue a state institution for ADA violation which also violate the Fourteenth Amendment. *United States v. Georgia*, 546 U.S. 151, 159 (2006). "Since the relevant provisions of the Eighth Amendment are made applicable to the states by the Fourteenth Amendment, Plaintiff may only state an ADA claim against Defendants if he has alleged that his Eighth Amendment rights were violated." *Blackburn v. S.C.*, CA. No. 0:06-2011-PMD-BM, 2009 WL 632542, at *20 (D.S.C. Mar. 10, 2009) (aff'd, 404 F. App. 810 (4th Cir. 2010)). As previously discussed, Plaintiff has failed to create a genuine issue of material fact regarding whether Defendants violated Plaintiff's Eighth Amendment rights. Accordingly, Plaintiff's has failed to show his Fourteenth Amendment rights were violated and summary judgment is appropriate with respect to this claim.

To the extent Plaintiff argues claim 2—Defendants violated the ADA by denying him handicapped status [Doc. 1 at 71–72]—Defendants argue Plaintiff has failed to exhaust his administrative remedies [Doc. 112-1 at 26]. The Court agrees as neither party has produced a copy of any grievance associated with this claim or any other evidence this claim has been properly exhausted. Accordingly, summary judgment is appropriate with respect to this claim.

hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. Accordingly, the due process inquiry must focus on the nature of the deprivation alleged. *Id.*

Following the reasoning of the Supreme Court in *Sandin*, the Fourth Circuit determined in *Beverati v. Smith*, 120 F.3d 500 (4th Cir. 1997), that a liberty interest was not implicated when prisoners were placed in administrative segregation, because "although the conditions [described by the prisoners] were more burdensome than those imposed on the general prison population, they were not so atypical that exposure to them for six months imposed a significant hardship in relation to the ordinary incidents of prison life." *Id.* at 502–04.[18]  The conditions in *Beverati* included exposure to a cell for six months that was infested with vermin and smeared with urine, where no outside recreation was permitted, no religious services were available, and food was served in considerably smaller portions.  *Id.* at 503.  At least one case from the District of South Carolina has concluded that a prisoner's "placement in a control cell for 10–18 days is insufficient to trigger due process protection."  *Abebe v. Carter*, No. 5:11-CV-2750-RMG-KDW, 2014 WL 130448, at *8 (D.S.C. Jan. 14, 2014) (Report and Recommendation addressing confinement).  Here, Plaintiff was confined to his cell for fewer than ten days, in that he was confined for 72 hours.  Plaintiff has not established that he experienced a constitutional

---

[18]Plaintiff includes neither facts regarding the conditions of his confinement during the 72-hour period nor information concerning how the conditions of his confinement during that period differ from the regular prison conditions.

violation, in that being held in lockup for 72 hours is not outside the ordinary incidents of prison life.  Accordingly, summary judgment is appropriate with respect to this claim.[19]

### Claim 4- Conspiracy[20]

Plaintiff asserts he lost his job, benefits, and previous court cases because Defendants Driskell, Scarborough, and Tartarsky, among others, engaged in a conspiracy to deny Plaintiff his constitutional rights.  [Doc. 1 at 15–49.]  The only evidence Plaintiff proffers of the alleged conspiracy is his statement that Defendants Driskell informed Plaintiff of the conspiracy in 2011.  [Doc. 122 at 46.]  Plaintiff alleges he has personally reviewed Defendant Driskell's paperwork confirming the conspiracy, but he has not provided any copies of this evidence or any further support of its existence or contents to

---

[19]To the extent Plaintiff alleges that Defendants retaliated against Plaintiff for filing previous lawsuits, Plaintiff has failed to create a genuine issue of material fact. To state a claim that is not legally frivolous, a plaintiff whose cause of action is based on retaliation must "allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (*citing Neitzke v. Williams*, 490 U.S. 319, 328 (1989)). Moreover, courts treat with skepticism retaliation claims by prisoners because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." *Id.* at 74.

Plaintiff alleges that Defendants' retaliation was in response to other lawsuits Plaintiff had filed against Defendants. [Doc. 1 at 52, 66.] Plaintiff asserts Defendants confiscated his extra mattress, moved Plaintiff to a top bunk, took Plaintiff's prescribed walker on two separate occasions, refused to allow Plaintiff to wear a head covering to protect himself from extreme temperatures, confined Plaintiff to his cell for 72 hours, and forced Plaintiff to undergo strip searches before entering administrative areas. As previously discussed, all of Plaintiff's claims related to Defendants' alleged retaliation fail. Plaintiff has provided no other evidence that Defendants are retaliating against him and has not alleged facts sufficient to create a genuine issue of material fact. Accordingly, summary judgment is appropriate with respect to this claim.

[20]The Court addresses Plaintiff's argument that some Defendants engaged in a conspiracy to ensure a positive outcome in Plaintiff's prior case. Plaintiff further alleges various conspiracies among the remaining Defendants throughout his Complaint. [*See e.g.* Doc. 1 at 51.] However, Plaintiff fails to provide any factual support for these assertions.

the Court. [Doc. 1 at 12.] Plaintiff contends he does not need direct evidence of a conspiracy and that circumstantial evidence is sufficient [Doc. 122 at 12]; however, Plaintiff's unsupported assertions are insufficient to establish a reasonable question of a material fact. *See Ross*, 759 F.2d at 365. Accordingly, summary judgment is appropriate with respect to this claim.[21]

**Qualified Immunity**

Defendants also argue they are entitled to qualified immunity. [Doc. 112-1 at 29–31.] The Court agrees.

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity does not protect an official who violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right. *Id.* Further, qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

---

[21]At various points in his pleadings. Plaintiff appears to allege both that the depravation of his wages and benefits caused his heart attack and that the conspiracy to ensure a favorable outcome in his previously filed court cases led to his heart attack. [Doc. 1 at 30, 35.] The Court takes note of the fact that Plaintiff suffered his heart attack in 2004 [Doc. 122-4 at 5], while he filed his previous federal court case in 2008 [C.A. No. 3:08-cv-02671-DCN] and his previous state court case in 2005 [C.A. No. 05-CP-40-3706]. It is nonsensical that Plaintiff could be claiming his heart attack was caused by an alleged conspiracy that took no effect until at least 2005.

To determine whether qualified immunity applies, a court must determine "'whether the plaintiff has alleged the deprivation of an actual constitutional right at all[ ] and . . . whether that right was clearly established at the time of the alleged violation.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action[,] assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citing *Harlow*, 457 U.S. at 819). For purposes of this analysis, a right is "clearly established" if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640.

District court and court of appeals judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). If a court decides in the negative the first prong it considers—i.e., the court decides the plaintiff has not alleged the deprivation of an actual constitutional right or the right was not clearly established at the time of the alleged violation—the court need not consider the other prong of the qualified immunity analysis. *See id.* at 243–45; *Torchinsky v. Siwinski*, 942 F.2d 257, 260 (4th Cir. 1991) (holding the court "need not formally resolve" the constitutional question of "whether the [plaintiffs] were arrested without probable cause" to address the plaintiffs' § 1983 claim; the court stated that it "need only determine whether [the defendant]—a deputy sheriff performing within the

35

normal course of his employment—acted with the objective reasonableness necessary to entitle him to qualified immunity").

As discussed above, Plaintiff's allegations fail to demonstrate Defendants violated Plaintiff's constitutional rights. Therefore, Defendants are entitled to qualified immunity.


**Remaining State Claims**

To the extent Plaintiff attempts to allege state law claims in addition to his § 1983 claim, such state law claims could be heard by this Court only through the exercise of supplemental jurisdiction, which allows federal courts to hear and decide state law claims along with federal law claims.[22]  Federal courts are permitted to decline supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3), however, if "the district court has dismissed all claims over which it has original jurisdiction."  To the extent Plaintiff bases his claim on state law, the Court recommends that the district judge decline to exercise supplemental jurisdiction in this case.

---

[22]A civil action for Plaintiff's state law claims could be cognizable in this Court under the diversity statute, if that statute's requirements are satisfied.  However, this Court does not have diversity jurisdiction in this case because Plaintiff and Defendants are all citizens of the State of South Carolina, which defeats the required complete diversity of parties.  *See* 28 U.S.C. § 1332.

**CONCLUSION**

Wherefore, based upon the foregoing, the Court recommends Defendants' motion for summary judgment be GRANTED and Plaintiff's motion for leave to file depositions by written questions, motion for issuance of three subpoenas, and two motions to compel discovery be FOUND AS MOOT.[23]

IT IS SO RECOMMENDED.

S/Jacquelyn D. Austin

United States Magistrate Judge

December 12, 2014

Greenville, South Carolina

---

[23]Because an order adopting this Report and Recommendation would terminate this action, the Court recommends finding as moot Plaintiff's two motions to compel discovery [Docs. 129, 137], motion for leave to file depositions by written questions [Doc. 135], and motion for issuance of three subpoenas [Doc. 136].